**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **RICKY LEWIS** | § | |
| **Petitioner** | § | |
| | § | |
| **V** | § | **CIVIL ACTION NO: 7:11-CV-42–O** |
| | § | |
| **USA** | § | |
| **Respondent** | § | |

Report and Recommendation on Motion to Vacate Sentence

Under the authority of 28 U.S.C. § 636(b) and Rules 8(b) and 10 of the Rules Governing Section 2254 Proceedings for the United States District Courts, this case was referred to the undersigned United States Magistrate Judge by Order of Reference (Docket No. 8) for hearing, if necessary, and proposed findings of fact and recommendation for disposition.

Procedural Background

On October 13, 2009, Petitioner Ricky Lewis was sentenced to 262 months in prison and a three-year term of supervised release after he pled guilty, in accordance with a plea agreement containing an appellate-rights waiver, to felony possession of a firearm, possessing a firearm in furtherance of a drug-trafficking crime, and manufacturing methamphetamine in a home where a three-year old child lived, in violation of 18 U.S.C. §§ 922(g)(1) and 924(c)(1)(A), and 21 U.S.C. §§ 841(a)(1), (b)(1)(C ), and 860a. His appeal was dismissed on August 16, 2010, and Lewis did not seek certiorari review. He timely filed his first section 2255 motion on March 17, 2011.

Factual Background[1]

In December 2008, a Wichita Falls constable attempted to serve one Alexis Hunter with eviction paperwork at her apartment located on Grant Street in Wichita Falls, Texas. As the

[1] The facts are from the factual resume (Docket No.18) and the presentence report (Docket No.62) in the original criminal trial cause No. 7:09-CR-20.

constable approached, they smelled the strong odor of anhydrous ammonia and ether coming from the apartment. The constable and a second officer who was summoned to the scene saw a box fan in a bedroom window to the apartment drawing out chemical vapors. Based on their training and experience, the constables suspected methamphetamine was being manufactured, and they contacted the Wichita Falls Sheriff's Office and Investigator Bobby Dilbeck of the Wichita County District Attorney's Office.

Deputies knocked and announced their presence at the front door several times before Lewis opened it. Lewis stepped outside with an occupant, Misty McCloud, behind him. Hunter remained in the south bedroom with her three-year-old daughter, M.B, before being removed from the apartment. Hunter told deputies and Investigator Dilbeck that McCloud was a friend that was visiting and that Lewis lived with her. Hunter signed a consent form giving Investigator Dilbeck and deputies permission to search her apartment. The chemical smell in the apartment was profound when deputies entered because Lewis was in the process of manufacturing methamphetamine. Inside, deputies recovered numerous items and paraphernalia for manufacturing and using methamphetamine. These included:

(1) a black sports bag containing 342 oz. bottle of sulfuric acid, plastic ware, tubing, and a glass container with chemical soaked shop towels;

(2) MyScale digital scale;

(3) a small bag containing methamphetamine (located inside of Hunter's purse);

(4) an empty pseudoephedrine box (pseudoephedrine is the precursor and primary ingredient needed to manufacture methamphetamine);

(5) a bag containing 1 gallon of camp fuel, 2 boxes of salt, 1 can of ether, 2 bottles of lye, and paper filters;

(6) an electric food grinder, and a clear plastic bag containing ground pseudoephedrine;

(7) a gray digital floor safe;

(8) a large blue plastic water container containing anhydrous ammonia underneath a child's wading pool in the front yard (anhydrous ammonia is used in the production of methamphetamine);

(9) an Armsco, .22-caliber revolver, loaded with seven rounds of ammunition (located in a kitchen cabinet);

(10) a Mossberg, Mode1500A, 12-gauge pump shotgun, loaded with four rounds of ammunition (located under the bed in the northwest bedroom); and,

(11) various drug paraphernalia (glass pipes containing burnt methamphetamine residue inside).

Also found in the bathroom was a child's plastic toy box that, along with toys, housed the hydrogen chloride gas generator ("HCL gas generator"). The HCL gas generator is used to convert liquid methamphetamine to powder methamphetamine. McCloud later told federal agents that Lewis was in the process of powdering the methamphetamine when the authorities had knocked on the door. The gas is produced by mixing sulfuric acid with salt; the gas is flammable and poisonous. McCloud told federal agents that the fumes were so strong that it burned her eyes. Many of the dangerous chemicals were found on the laundry room floor and in easy reach of M.B. Concerned for M.B.'s welfare, deputies contacted Child Protective Services, who took M.B. to the hospital. A hair follicle test of M.B. revealed that M.B. had been exposed to and ingested methamphetamine.

In the factual résumé Lewis sponsored in support of his guilty plea[2], Lewis admitted that on December 30, 2008, he was manufacturing methamphetamine when law enforcement came to the

---

[2] Factual Resume, Docket No. 18, Cause No. 7:09-CR-20.

apartment. Lewis admitted that Hunter's three-year-old daughter, M.B., lived at the apartment. He admitted he manufactured methamphetamine when M.B. was present. And he admitted that his manufacturing methamphetamine at the apartment where M.B. lived and when M.B. was present caused M.B. to become exposed to the dangerous and poisonous chemicals and gases used in the manufacturing of methamphetamine and caused M.B. to become exposed to and test positive for methamphetamine. Lewis also admitted that he possessed the two firearms found in the apartment, that he possessed the firearms despite having been convicted of a felony, and that he possessed the firearms in furtherance of a drug-trafficking crime, that is, his manufacture of methamphetamine.

Petitioner's Alleged Grounds for Relief

By his Motion, Lewis asserts two allegations of ineffective assistance of both trial and appellate counsel, to-wit:

1. That his appellate counsel was ineffective because he unsuccessfully challenged the Court's application of the career-offender provision under USSG § 4B1.1 based upon two prior state court convictions of drug offenses on a "mathematical error" ground, rather than on the "actual innocence" ground.

2. That his plea of guilty to the charge of possessing a firearm in the furtherance of a drug trafficking crime under 18 USC §924(c) was induced by his attorney's ineffectiveness in advising him as to the elements of the offense when there was not a sufficient nexus between the firearms on the premises and the drug activities on the premises.

Government Response

The Government responds by asserting that Lewis' first claim is meritless as a matter of law because the record clearly establishes that Lewis was not "innocent" of the two drug offenses considered by the Court in imposing the career offender enhancement under USSG 4B1.1. Hence,

Lewis' counsel's performance could not have been defective.

As to the second of Lewis' claims, the Government responds that Lewis' trial counsel was not negligent or ineffective in advising Lewis to plead guilty to the charge of possessing a firearm "in the furtherance of" a drug trafficking crime under 18 USC 924(c), because actual employment or usage of the firearm is not a necessary element of the offense.

Standard for Review

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence. It provides four grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is otherwise subject to collateral attack." *United States v. Placente* , 81 F.3d 555, 558 (5th Cir. 1996) (internal marks omitted). When a prisoner has pled guilty, he will successfully challenge his convictions under section 2255 only "if: (1) the plea was not entered voluntarily or intelligently, . . . or (2) the [prisoner] establishes that he is actually innocent of the underlying crime." *United States v. Sanders* , 157 F.3d 302, 305 (5th Cir. 1998). The prisoner bears a heavy burden to convince the court that his guilty plea was involuntary after testifying to its voluntariness in court. *Deville v. Whitley* , 21 F.3d 654, 659 (5th Cir. 1994). This is because solemn declarations in open court carry a strong presumption of verity. *Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S. Ct. 1621, 1628-29, 52 L. Ed. 2d 136 (1977).

Judge John McBryde in *United States v. Moore*, 2013 U.S. Dist. LEXIS 104666 (N.D. Tex. 2013) recently summarized the standard for review of claims of ineffectiveness of counsel as follows:

"To prevail on a claim of ineffective assistance of counsel, movant must

establish that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on such a claim, movant must show that counsel's performance was deficient and that movant was prejudiced by counsel's errors. *Id.* at 687. Prejudice requires movant to show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id*. at 694. In the context of a guilty plea, prejudice requires movant to show there is a reasonable probability that, but for his attorney's errors, he would not have pleaded guilty but would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). While both prongs of the Strickland test must be met to demonstrate ineffective assistance, both need not be considered if movant makes an insufficient showing as to one. Id. at 687, 697.

Judicial scrutiny of this type of claim must be highly deferential; movant must overcome a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Id*. at 689. The court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. Counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reason-able professional judgment." *Id*. at 690." At page 5"

In the context of a plea of guilty, the Fifth Circuit recently stated in *Bond v. Dretke*, 384 F. 3d 166, 167-68 (2004):

> "To prove prejudice an ineffective assistance of counsel claim in the context of a guilty plea, the habeas petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985)

## Discussion

### Career Offender Enhancement

Lewis' argument as to the first ground proceeds from the premise that the two prior state court convictions, identified and described in the presentence report,[3] were not for "controlled substance offenses" within the meaning of the Career Offender provision of the Sentencing Guidelines. For a defendant to be considered a career offender, subpart (3) of USSG §4B1.1 expressly provides that "the defendant has at least two prior felony convictions of . . . a controlled substance offense." (Emphasis provided). Section 4B1.2(b) defines a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."

The two offenses referenced and described in the presentence report[4] as supporting Lewis' career offender status were for violations of Texas Health & Safety Code § 481.124 defining the offense as "Possession or Transport of Certain Chemicals With Intent to Manufacture a Controlled Substance" and providing as follows:

---

3 Presentence Report (PSR), Docket No. 62, 7:09-CR-20

4 Id., ¶¶ 65 and 66.

> (a) A person commits an offense if, with intent to unlawfully manufacture a controlled substance, the person possesses or transports:
> (1) anhydrous ammonia;
> (2) an immediate precursor; or
> (3) a chemical precursor or an additional chemical substance named as a precursor by the director under Section 481.077(b)(1).

Pseudoephedrine is a chemical precursor. TEX .HEALTH & SAFETY CODE §481.002(51)(O).

One of the commentaries to Section 4B1.2 states "Unlawfully possession **a listed chemical** with intent to manufacture a controlled substance (21 U.S.C. § 841(c)(1) is a "controlled-substance offense." Pseudoephedrine is a List I chemical for the purposes of section 841(c)(1).

The presentence report attached copies of the indictments and judicial confessions for Lewis' two prior felony convictions for possessing a chemical with the intent to manufacture a controlled substance. Both of them charged Lewis with, and he admitted to, possessing pseudoephedrine, a chemical precursor to methamphetamine, with the intent to manufacture methamphetamine under TEX. HEALTH & SAFETY CODE § 481.124. These are controlled-substances offenses as defined under USSG § 4B1.2. The Texas statute is substantially similar to the two federal statutes cited in the USSG commentary to section 4B1.2 on what is included in the definition of a controlled-substance offense. It is clear that the definition under section 4B1.2 includes possessing chemicals and/or equipment with the intent to manufacture a controlled substance. Thus, as a matter of law, Lewis fails to show his appellate attorney was constitutionally deficient for failing to raise his career-offender objection as a claim of actual innocence since he clearly was not actually innocent of being a career offender.

Firearm "in Furtherance" Enhancement

Lewis' second argument proceeds from the faulty premise that the phrase "in furtherance

of" as used in section 924(c) requires "active employment" of a firearm at the place where or when a drug offense occurs. Lewis argument is further premised upon the Supreme Court's holding in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). There the Supreme Court was faced with an earlier version of this statute that prohibited "using] or carrying] a firearm during and in relation to" drug trafficking. The statute, unlike the current statutory language, did not explicitly criminalize possession of the firearm at the location of the drug transaction.

As reflected in Fifth Circuit's more recent analysis of that section in its decision in *United States v. Caballos-Torres*, 218 F.3d 409 (2000), Lewis' second argument is foreclosed by Congress' amendment[5] to 18 USC §924(c) adding the term "in furtherance of" to the prior phrase "using] or carrying] a firearm during and in relation to" a drug offense. In *Caballus-Torres*, the Court parsed the language of the statute as amended since the Supreme Court's *Bailey* decision and distinguished between mere possession of a firearm at the place where a drug offense occurs and the brandishing, utilizing, or actively employing a firearm in such circumstance. Finding a middle ground to be included within the phrase "in furtherance of" the Court found "[S]ome factors that would help determine whether a particular defendant's possession furthers, advances, or helps forward a drug trafficking offense might include: the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.".... "Thus, firearm possession that furthers, advances, or helps forward the drug trafficking offense violates the statute." *Caballus-Torres*, p. 414-15.

Similar to *Caballos-Torres*, Lewis' weapons, purchased by him from another drug dealer for methamphetamine and stolen items, were loaded. They were located in his residence along with

---

5 The Senate bill was titled the "Bailey 'Use or Carry' Firearms Bill."

substantial amounts of the chemicals and supplies necessary to make methamphetamine. And they were strategically placed in the residence giving him easy access to them to defend his contraband. The loaded shotgun was under the bed in the northwest bedroom. The loaded pistol was in a kitchen cabinet. Even Lewis' own statements to federal agents confirm there is no question that he possessed those firearms for "protection" of his methamphetamine. (PSR ¶18.)

Lewis alleges that his plea was not a knowing or voluntary plea because he relied upon his attorney's representation that "mere possession" of the firearm was a sufficient factual basis for a conviction on the charge. "To be constitutionally valid, a guilty plea must be knowing and voluntary." *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir.1989). Thus, a guilty plea may be invalid if induced by defense counsel's unkept promises. See *id*. Similarly, the same principal should apply to counsel's representations to his client as to the application of the law to the known facts.

On the other hand, a defendant ordinarily will not be heard to refute his testimony given at a plea hearing while under oath. *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir.1985). "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, *supra*. To obtain federal habeas relief on the basis of alleged promises, a petitioner must prove that he was promised an "actual sentencing benefit" by showing (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise. *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002); see also *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)." In same context of trial counsel's inducement to his client to enter a plea of guilty to a particular charge, the courts have found no error in trial counsels' promises 1. that a particular judge would do the sentencing, *Daniel v. Cockrell*, *supra*; 2. that the defendant would be pardoned in three years, *Davis v. Butler*, 825 F. 2d 892 (5th Cir. 1987); and, 3. that the sentence would be no more than 15 years, *Harmason v. Smith*, 888 F. 2d 1527 (5th Cir. 1989).

If the defendant produces independent indicia of the likely merit of his allegations, typically in the form of one or more affidavits from reliable third parties, he is entitled to an evidentiary hearing on the issue. See *Blackledge, supra.* If, however, the defendant's showing is inconsistent with the bulk of his conduct or otherwise fails to meet his burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary. See *United States v. Smith*, 844 F.2d 203, 208 (5th Cir.1988) (per curiam); *United States v. Raetzsch*, 781 F.2d 1149, 1152 (5th Cir.1986).

At the re-arraignment hearing[6] when Lewis entered his plea, he asserted under oath[7] to the Court that his guilty pleas were entirely voluntary, not influenced by any promises, assurances, threats or coercion of any kind from anyone.[8] Further he averred under oath that prior to signing the factual resume he had read it, discussed it with his attorney, understood it, signed it voluntarily and that the statements contained in his factual resume were true and correct.[9]

There is simply no evidence of any kind before this Court that Lewis' attorney made any such representation or promise. There is no independent indicia that Lewis' counsel made any such assumption, statement or representation that mere possession of a firearm at the scene of the drug offense as an inducement to Lewis to plead guilty to the charge. Even had he done so, the admitted facts establish the sufficient nexus between Lewis' possession of the firearms and his manufacturing of the methamphetamine at the apartment as to satisfy the "in furtherance of" element of the offense. And there is no question that his trial attorney was not constitutionally deficient for advising Lewis that his mere possession of the firearms in furtherance of a drug-trafficking crime constituted a violation of section 924(c).

---

6 See the Transcript of Re-arraignment of Ricky Lewis, Docket No. 60, Cause No. 7:09-CV-20.

7 *Id*., p.3.

8 *Id*., p.24.

9 *Id*. P. 27-8.

Finding that Lewis' showing is inconsistent with his conduct and acknowledgments at the time of his re-arraignment and entry of his guilty pleas and concluding that both of Lewis' grounds for relief lack merit as a matter of law, I find that an evidentiary hearing is unnecessary and I recommend to the District Court that Lewis' Motion to Vacate be DENIED.

It is so ORDERED, this 30th day of October, 2013.

Robert K. Roach
Robert K. Roach
UNITED STATES MAGISTRATE JUDGE

Standard Instruction to Litigants

A copy of this report containing findings, conclusions of law and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).